UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DANIEL BOGOSIAN, et al., *Individually
and on behalf of others similarly situated,*

        Plaintiffs,

        - against -

ALL AMERICAN CONCESSIONS, et al.,

        Defendants.
----------------------------------------------------------------X

MEMORANDUM AND ORDER
06-CV-1633 (RRM) (RML)

MAUSKOPF, United States District Judge.

Plaintiffs, who were employed as concession stand workers during the 2005 U.S. Open tennis tournament ("U.S. Open"), have brought this putative collective/class action based on Defendants' alleged failure to pay Plaintiffs' regular and overtime wages.

Plaintiffs have asserted causes of action under the Fair Labor Standards Act ("FLSA") and New York Labor Law, together with numerous common law claims. Currently pending before the Court are: (1) Defendants Restaurant Associates' ("RA") and United States Tennis Association's ("USTA") joint motion to dismiss the complaint (Docket No. 24); and (2) Plaintiffs' first motion to (a) circulate a notice of pendency and consent to join pursuant to 29 U.S.C. § 216(b), (b) certify a class under Federal Rule of Civil Procedure 23, and (c) amend the Complaint to add Zelda Washington as a Plaintiff (Docket No. 21).[1]

For the reasons set forth below, Defendants' motion to dismiss is GRANTED as to any

---

[1] Plaintiffs bring suit against three separate but apparently affiliated "All American" entities: All American Concessions, All American Concessions, Inc. and All American Concessions Enterprises, Inc. Plaintiffs have also sued company principals Mitch Steinberg and Marty Rosen. The Court will refer to these entities collectively as "All American." The All American Defendants oppose the motion to dismiss, and do not address Plaintiffs' requests for Rule 23 and FLSA certification.

claim purportedly brought under New York General Business Law § 349, and DENIED as to all other claims. Plaintiffs' motion to add Zelda Washington as a Plaintiff is GRANTED; Plaintiff's motion to circulate a notice of pendency is GRANTED, subject to the conditions set forth in this Order; and Plaintiff's motion for class certification under Rule 23 is DENIED.

**Factual Background**

The following facts are taken from the Complaint and the parties' affidavits, affirmations and supporting documents submitted in connection with this motion, and are not disputed. USTA owns and operates the U.S. Open, one of the nation's premier tennis tournaments held annually at USTA's Billie Jean King National Tennis Center in Flushing, New York. According to USTA, the U.S. Open is the highest attended annual sporting event in the world. For the 2005 tournament, USTA contracted with RA Tennis Corp.[2] to provide catering and concession services. In turn, RA subcontracted with All American Concessions Inc. for some of those services, primarily catering coffee, tea, smoothies, ices and baked goods.

Plaintiffs were recruited by All American through a New York University electronic mailing list and through a community center in Queens. The job description sought 40 people to work two shifts, one during the day and one at night, paying approximately $10 to $12 per hour.

---

[2] Plaintiffs have brought suit against an entity called "Restaurant Associates." Defendants state that Restaurant Associates is the parent company of its wholly owned subsidiary, "RA Tennis Corp," the latter being the entity that held the contract with USTA to provide the catering/concession services at the 2005 U.S. Open and that subcontracted some of those services to All American. Plaintiffs indicate that they were unaware of the true corporate nature of the food concessionaire at the U.S. Open until the instant motion was filed as they have yet to be provided with any discovery. Plaintiffs argue, and the Court agrees, that they should be allowed to amend their Complaint as appropriate to add and/or dismiss parties to this action once they have had the opportunity to conduct discovery. Hereinafter, the Court will use "RA" to refer collectively to these affiliated entities, as resolution of this issue is not required to address the instant motions.

While the posting indicated that full run of the tournament could pay approximately $2000, individuals could work as little or as much as they wished; they did not have to work full shifts, nor were they required to work any set number of hours per day or per week. Approximately 40 to 60 people were hired, including Plaintiffs.

Plaintiffs worked from August 23, 2005 through September 11, 2005. Their jobs entailed, among other things, constructing stands, brewing coffee, making coffee drinks and smoothies, baking cookies, manning the stands including the cashier's post, setting up, cleaning and maintaining the stands, taking inventory, and procuring ingredients and supplies from the stadium commissary.

Plaintiffs were paid twice with checks from All American. Plaintiffs allege that they were not paid their full regular wages, and were not paid at all for overtime worked.

## **Motion to Dismiss Wage Claims**

While Defendants RA and USTA originally moved for dismissal under Rule 12(b)(6), the parties have submitted evidentiary materials in support of their arguments in the form of documents and affidavits. Defendants have asked this Court to treat their motion as one for summary judgment. (Docket No. 24 at 2 n.3.) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The Court has considered the submissions from all parties and will treat this motion as one for summary judgment.

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 466 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine' issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The Court must view all of the evidence in the light most favorable to the non-moving party. United States v. Diebold, 369 U.S. 654 (1962).

The central issue here is which entity or entities "employed" Plaintiffs for purposes of wage liability under the FLSA.[3] Defendants RA and USTA allege that Plaintiffs were employed by, or in the alternative were independent contractors of, Defendant All American. As such, Defendants RA and USTA maintain that, as a matter of law, they have no liability for Plaintiffs' wage claims. In opposition, Plaintiffs maintain that both RA and USTA, together with All American, are Plaintiffs' joint employers. Similarly, All American maintains that RA and USTA were joint employers, albeit without conceding its own employment relationship with Plaintiffs.

Under the FLSA, an entity employs an individual if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). Given this expansive definition of employment, see Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947), any entity that as a matter of

---

[3] Plaintiffs also bring a parallel wage claim under the New York Labor Law. Courts apply the same standard for determining joint employment in assessing claims under both statutes. See, e.g., Chen v. Street Beat Sportswear, Inc., 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005).

4

economic reality functions as an individual's employer may be treated as an "employer" under the Act even if another entity also so functions at the same time. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). Although the court in Zheng suggested that certain "outsourcing" arrangements fall outside the ambit of the FLSA, id. at 76, it held more generally that, in such circumstances, a court, in determining whether a particular entity has functional control over a worker, must consider the "circumstances of the whole activity viewed in light of economic reality . . ." id. at 71 (internal quotation marks omitted). In so doing, a court should take account of such factors as:

> (1) whether [the defendants'] premises and equipment were used for the plaintiffs' work;
>
> (2) whether the [c]ontractor [c]orporations had a business that could or did shift as a unit from one putative joint employer to another;
>
> (3) the extent to which the plaintiffs performed a discrete line-job that was integral to [the defendants'] process of production;
>
> (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes;
>
> (5) the degree to which [the defendants] or their agents supervised the plaintiffs' work; and
>
> (6) whether the plaintiffs worked exclusively or predominantly for [the defendants].

Id. at 72. A court is also free to "consider any other factors it deems relevant to its assessment of the economic realities." Id.

The court in Zheng noted that the inquiry required for the proper application of the economic reality test for joint employment requires three types of determinations: (1) historical findings of fact that underlie each of the relevant factors; (2) findings as to the existence and

degree of each factor; and (3) the conclusion of law to be drawn from applying the factors, that is, whether an entity is a joint employer. Id. at 76. In order to grant summary judgment for Defendants, the Court "would have to conclude that, even where both the historical facts and the relevant factors are interpreted in the light most favorable to the plaintiffs, the defendants are still entitled to judgment as a matter of law." Id.

Here, based on the record that has been developed thus far without the benefit of discovery, and taking the facts in the light most favorable to Plaintiffs, the Court cannot say that Defendants RA and USTA are entitled to judgment as a matter of law. There remain significant questions as to the historical facts surrounding the nature and scope of Plaintiffs' employment and the relationships among Defendant entities.[4] As such, the Court can neither fully determine the existence and degree of the factors underlying the economic reality test, nor reach the ultimate issue of joint employment.

For example, among the critical facts still at issue are the nature and scope of any supervision by Defendants RA and USTA of Plaintiffs' work, as well as the nature and scope of the control, both formal and informal, that these Defendants may have had over the terms and conditions of Plaintiffs' employment. Plaintiffs, through their pleadings and affidavits, maintain that both RA and USTA managers trained Plaintiffs; provided daily and regular supervision of their tasks, including, among other things, the construction and maintenance of the concession stands and the collection of sales revenue; and established and enforced day-to-day rules that Plaintiffs were expected to follow, including how often and where breaks could be taken.

---

[4] The Court notes that the electronic case filing ("ECF") docket indicates that none of the corporate Defendants has filed a Disclosure Statement pursuant to Federal Rule of Civil Procedure 7.1. All must do so immediately.

Moreover, under the subcontract governing All American's work at the U.S. Open, both RA and USTA have rights to oversee various aspects of the work performed by All American and its employees, including approving pricing and menus, and objecting to the continued employment of any All American employee – requiring that employee's termination and removal from the premises.[5]

Defendants RA and USTA dispute many of Plaintiffs' claims. For example, they assert that their supervision was "minimal" and "sporadic." Moreover, they maintain that their oversight of All American and its employees was merely that required to enforce All American's obligations under a typical catering subcontract, and was not of a nature or degree sufficient to establish an employment relationship under Zheng. However, Defendants have not established that the contractual relationships among USTA, RA and All American are "typical," given that they govern aspects of catering for a massive, complex, international sporting event with myriad vendors, all of whom ostensibly contribute to the tournament's financial and overall success. There remain questions as to the relationships among these three contracting entities, and how those relationships affect the existence and degree of the factors necessary to establish joint employment. Simply put, RA and USTA have failed to demonstrate on this record that, based on the circumstances of the whole activity, and viewed in light of the economic reality of this particular situation – catering for the U.S. Open – they cannot be found to be joint employers as a

---

[5] It is unclear whether USTA is actually a party to this subcontract. The preamble indicates that only RA and All American are parties and these entities have signed the contract; yet, the contract, a copy of which was submitted by Defendants RA and USTA, contains an additional, albeit blank, signature line for USTA. In addition, the subcontract incorporates by reference the terms of the 1998 "Licensing Agreement" between RA and USTA that governs RA's obligations to provide food service at USTA's National Tennis Center. This Agreement is not part of the record. These documents raise questions that underscore the difficulty in assessing any joint employment relationship among the Defendant entities at this stage.

matter of law. As such, their motion to dismiss the wage claims brought under the FLSA and New York Labor Law is denied.

## Motion to Dismiss Additional State Law Claims

RA and USTA also move to dismiss Plaintiffs' state law claims for unjust enrichment, quantum meruit and breach of contract. As pled in the Complaint, these claims provide fair notice of the grounds upon which they rest and contain sufficient factual allegations to render them plausible. See Iqbal v. Hasty, 490 F.3d 143, 155-158 (2d Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). As Defendants concede, these claims turn on the very same issues discussed above, relating to joint employment and/or the contractual relationships among the parties. There remain questions of fact with regard to these issues, and for the reasons set forth above, Defendants' motion to dismiss these state claims must be denied.

However, with respect to a purported claim brought under New York General Business Law § 349, Defendants' motion is granted. This statute proscribes deceptive business practices and is aimed at consumers at large, not private contract disputes. See Teller v. Bill Hayes, Ltd., 213 A.D. 2d 141, 144-49 (N.Y. App. Div. 2d Dep't 1995); see also GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel, 381 F. Supp. 2d 267, 282 (S.D.N.Y. 2005). Although the Complaint, at ¶ 1, alleges violations of this statue, there is no further mention of the statute, nor are there any specific allegations supporting such a claim. Arguing that they have, indeed, sufficiently pled such a claim, Plaintiffs argue that "deception by defendants in representing to vendors that payment would be made for their work is inferred from the pleadings." See Plaintiffs' Opposition at p. 15. Defendants should not be required to infer from the pleadings the

critical facts and the operative legal standard underlying a claim. As such, Plaintiffs have failed to meet even the minimal pleading standards set forth in Federal Rule of Civil Procedure 8(a). Moreover, the conduct alleged in this Complaint is not actionable under this statute, as it is has no broader impact on consumers at large and is merely a contract dispute between the parties. See Id.; GuideOne, 381 F. Supp. 2d at 282; Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y. 20, 25 (N.Y. 1995). For these reasons, the Court grants Defendants' motion to dismiss Plaintiffs' claim brought under New York General Business Law § 349.

### Notice of Pendency

Plaintiffs seek to circulate a court-authorized notice pursuant to the FLSA, 29 U.S.C. § 216(b), informing potential plaintiffs of their opportunity to "opt-in" to the instant lawsuit. This request is granted, subject to modification of the class definition consistent with this Order.

Under Section 216(b) of the FLSA, an action to recover unpaid wages

> [m]ay be maintained against any employer . . . by an one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought.

It is well settled that district courts also have discretion under this section to authorize the sending of notice to potential class members, and to direct a defendant employer to disclose the names and addresses of those potential class members. Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). When employed in the appropriate case, these mechanisms foster "the broad remedial purpose of the [FLSA] . . . as well

as the interest of the courts in avoiding multiplicity of suits." Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978).

In determining whether a matter should proceed as a collective action, courts generally follow a two-step process. First, a court determines whether class members are similarly situated, based on the pleadings and affidavits. Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007) (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). If the plaintiffs can satisfy the minimal burden of demonstrating that they are similarly situated to the potential class members, the court certifies the class and provides for notice to be sent to allow potential plaintiffs to "opt in" to the action. Id. After discovery, the court undertakes a second inquiry, examining with a greater degree of scrutiny whether members of the plaintiff class, including those who have opted in, are similarly situated. Id.; see also Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2006 U.S. Dist LEXIS 74039 at *29 (S.D.N.Y. Sept. 29, 2006) (noting that "post-discovery . . . the Court applies heightened scrutiny to this inquiry as compared to pre-discovery") (citation omitted). If the court is satisfied at this stage that the class members are similarly situated, the collective action proceeds to trial; otherwise, the court decertifies the class, and the class members must pursue their claims individually. Jacobs, 483 F. Supp. 2d at 265 (citing Lee, 236 F.R.D. at 197).

Courts in this Circuit look to several factors to determine whether members of a putative class are similarly situated, including 1) disparate factual and employment settings of the individual plaintiffs; 2) defenses available to defendants which appear to be individual to each plaintiff; and 3) fairness and procedural considerations counseling for or against notification of the class. See, e.g., Guzman v. VLM, Inc., No. 07-CV- 1126, 2007 U.S. Dist. LEXIS 75817, *9-

10 (E.D.N.Y. Oct. 11, 2007) (collecting cases). Plaintiffs must make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261; Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 1010, 1014 (S.D.N.Y. 2003); Rosolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001).

Relying on their claim that they were jointly employed by All American, RA and USTA, Plaintiffs initially maintained that they are similarly situated to vendors who worked for All American, RA, USTA, Mitch Steinberg and/or Marty Rosen at any time from August 23, 2005 through September 25, 2005. In using the disjunctive "or" to define their putative class, Plaintiffs attempt to encompass all employees of all three entities, including those who may have performed wholly different services at the tournament (or even elsewhere) under wholly different terms and conditions of employment. Defendants objected to this definition as overbroad, and instead, consented to the circulation of a class notice that limited the class definition solely to employees who worked collectively for all of the named employers pursuant to Plaintiffs' joint employment theory.[6] In their Reply, Plaintiffs agreed to this limitation on their putative class.

Thus, the Court finds, and the parties agree, that Plaintiffs have met their minimal burden of demonstrating that they are similarly situated to this revised, narrow class – that is, those vendors who worked, collectively, for All American and the other named defendants during the 2005 U.S. Open from August 23, 2005 to September 11, 2005. A class so constituted would

---

[6] In consenting to the circulation of class notice, Defendants have preserved their right to move to decertify the class should discovery reveal that the Plaintiffs, including those who opt in pursuant to the class notice, are not similarly situated. See Jacobs, supra.

11

involve individuals who worked in the same location, during the same period, under the same management, and pursuant to the same general policies regarding the hours they worked and how those hours were recorded and compensated. The legal issues underlying Plaintiffs' FLSA claim, including whether Defendant entities were, indeed, joint employers, are common to all members of the putative class. Given the broad remedial nature of the FLSA and the goal of avoiding the multiplicity of suits, see Braunstein, supra, the Court finds that circulation of a notice of pendency, with modifications to the language consistent with this Order, is appropriate.

## Rule 23 Class Certification

Plaintiffs also seek to certify their New York Labor Law claim as a class action pursuant to Federal Rule of Civil Procedure 23.[7] The putative class would include not only individuals who would be included in a collective action under the FLSA due to non-payment of overtime wages, but also those who were not paid regular wages. That request is denied as premature.

The class action is different from a FLSA action because it requires Plaintiffs to meet the strict requirements of numerosity, typicality, commonality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); Levinson v. Primedia Inc., No. 02-CV-2222, U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003). In addition, Plaintiffs must establish that the proposed class action meets at least one of the standards enumerated in Rule 23(b)(1)-(3). In addressing Plaintiffs' motion, the Court need not analyze all of these requirements, as there is one that is dispositive based on the record that has been developed at this very early stage of the proceedings.

---

[7] While not clear from their moving papers, Plaintiffs concede in their Reply that they seek class certification only as to their New York Labor Law wage claim, and not their claims for breach of contract and unjust enrichment.

Rule 23(a)(1) requires "numerosity" – that the class be "so numerous that joinder of all members is impracticable." And though "there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers between 21 and 40 are given varying treatment." 5 James Wm. Moore et al., Moore's Federal Practice § 23.22(1)(b) (3d ed. 1997) (citing Bishop v. N.Y. City Dep't of Hous. Pres. & Dev., 141 F.R.D. 229, 235-236 (S.D.N.Y. 1992); Town of New Castle v. Yonkers Contracting Co., 131 F.R.D. 38, 40 (S.D.N.Y. 1990). In the Second Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp.v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs allege that between 40 and 60 individuals were employed as vendors at the 2005 U.S. Open, and Plaintiffs "and many other vendors worked substantially more than forty hours per week." See, e.g., Affidavits of Daniel Bogosian, Monica Kapoor, and Christian Roedel. However, based on these affidavits as well as other records provided in support of their motion, Plaintiffs have not demonstrated that there is a sufficient number of vendors who actually have claims for non-payment of overtime or regular wages to meet the numerosity requirement of Rule 23(a).

For example, on the record as currently developed, it appears that many vendors may not have worked any overtime hours at all during the 20-day run of the Open, and many may not even have claims for regular wages owed. See Exhibit D to the Affidavit of Michael Shen, Esq. in Support of Plaintiff's First Motion to Certify Class (Docket No. 23). Although some vendors worked contiguous days, others worked so sporadically that their days could never have amounted to a 40-plus-hour workweek requiring overtime pay. Individual workers' hours for the entire 20-

day period span from as few as four (4) to as many as 222. The hours worked by many of the named Plaintiffs far exceed those of their fellow vendors in terms of both hours worked on any given day and total hours worked. Id. This is consistent with Plaintiffs' allegation that vendors were allowed to work double shifts if they chose, and could work as much or as little as they wished. See, e.g., Affidavit of Daniel Bogosian, at ¶¶ 3, 18. Thus, many of these vendors have no claim to overtime.

Moreover, based on the record as it now exists, it is far from clear how many of the vendors even have claims for wages owed. Indeed, one of the named Plaintiffs indicates that "the only plaintiffs who were paid accurately were the people who worked less hours." See Affidavit of Joshua Burstein at ¶ 34.

In light of these facts, Plaintiffs have failed to establish that the putative class would meet even the minimum threshold for numerosity and impracticality of joinder. This is not surprising at such an early stage of the litigation, before discovery, and under these facts, where not every member of the putative class sought to be certified may have grounds for a claim. As such, Plaintiffs' motion for class certification under Rule 23 is denied at this time.

## Motion to Amend to Add Plaintiff Zelda Washington

Plaintiffs seek to amend their complaint to add Zelda Washington. Federal Rule of Civil Procedure 20(a) provides in relevant part: "Persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction [or] occurrence . . . ." Federal Rule of Civil Procedure 21 provides, in relevant part: "Parties may be dropped or added by order of the court on motion of any party or of its own

initiative at any stage of the action and on such terms as are just." Defendants have not objected to Washington's addition as a Plaintiff and the Court finds that her inclusion in the action would be just. Accordingly, the motion to add Washington as a Plaintiff is granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' and Defendants' motions are each GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED as to Plaintiffs' claim under New York General Business Law § 349, and DENIED as to the remaining claims. Plaintiffs' request to add Zelda Washington as a Plaintiff is GRANTED; Plaintiffs' request for class certification is DENIED, with leave to renew at the appropriate stage in these proceedings; and Plaintiffs' request to circulate a notice of pendency is GRANTED, subject to Court approval of an amended notice of pendency consistent with this Order. The parties are directed to meet and confer regarding the preparation of an amended notice of pendency and to submit a proposed notice to the Court on or before October 24, 2008. If the parties are unable to agree on the form of such notice, they shall submit letters, not to exceed three (3) pages each, outlining their respective positions on any disputed issues.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2008

_____
ROSLYNN R. MAUSKOPF
United States District Judge