UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIEL BOGOSIAN, et al., *Individually and on behalf of others similarly situated*,

                 Plaintiffs,

       - against -

ALL AMERICAN CONCESSIONS, ALL AMERICAN CONCESSIONS, INC., ALL AMERICAN CONCESSIONS ENTERPRISES, INC., MITCH STEINBERG, MARTY ROSEN, RESTAURANT ASSOCIATES, UNITED STATES TENNIS ASSOCIATION,

                 Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
06-CV-1633 (RRM)(RML)

**MAUSKOPF, United States District Judge.**

Plaintiffs brought this putative class and collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and state law, to recover allegedly unpaid wages. On June 1, 2010, the parties reported that the named plaintiffs had settled all claims against defendant Restaurant Associates ("Restaurant"). (*See* Minute Entry for Status Conf. before Magistrate Judge Robert M. Levy, June 1, 2010.) On October 13, 2010, this Court, on consent, ordered dismissal of plaintiffs' claims against Restaurant and the United States Tennis Association ("USTA"). (Stipulation and Order (Doc. No. 80).) Presently before the Court is Restaurant's motion for summary judgment on its cross-claim for indemnity against defendants All American Concessions, Inc. ("All American"), a Florida corporation, and Marty Rosen, All American's principal. (Cross-cl. (Doc. No. 46); Restaurant's Mot. for Summ. J. (Doc. No. 81).) For the reasons below, Restaurant's motion is GRANTED.[1]

---

[1] As discussed more fully below, Restaurant's application for attorney's fees and costs will be addressed upon submission of proper documentation.

## BACKGROUND[2]

USTA contracted with a subsidiary of Restaurant to provide catering services for the 2005 United States Open tennis tournament (the "U.S. Open"). (Restaurant's 56.1 Stmt. (Doc. No. 81-1) ¶ 20.) Restaurant, in turn, subcontracted with All American, a Florida corporation, to sell coffee, tea, and other products at U.S. Open concession stands (the "Contract"). (*Id.* ¶ 21.) The Contract provided for All American's indemnification of Restaurant. (Decl. of Andrew P. Marks ("Marks Decl."), Ex. 7 (Doc. 81-10) (the Contract), at ¶ 5.2.) The indemnification clause is discussed in greater detail below. Also according to the Contract, All American was responsible to "recruit, hire, train, direct and discipline the necessary employees" for the concession stands. (Contract ¶ 2.9; *see* Restaurant's 56.1 Stmt. ¶ 26; All American's and Rosen's Joint Cntrstmt. (Doc. No. 82-1) ("Rosen's Cntrstmt.") ¶ 26.) The Contract also obligated All American to procure various insurance policies, including general liability insurance, employer's liability insurance, and umbrella or excess liability insurance, each naming Restaurant and USTA as additional insureds. (Contract ¶ 5.1; Restaurant's 56.1 Stmt. ¶ 9.) All American never procured any insurance, however. (Restaurant's 56.1 Stmt. ¶ 9.)

---

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See* Local R. 56.1(d) (requiring each paragraph in the movant's and opponent's statements to "be followed by citation to evidence which would be admissible"); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). In All American's Rule 56.1 counterstatement, only one of the ninety paragraphs is followed by a citation (which itself lacks a pincite). Ordinarily, failure to comply with the Local Rules regarding 56.1 Statements would result in the material facts in the non-complying party's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of N.Y.*, No. 06-CV-4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n.2 (E.D.N.Y. Nov. 9, 2005) (same). Accordingly, for the purposes of this motion, Restaurant's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

Rosen was All American's sole incorporator, director, president, registered agent, and majority shareholder, until its administrative dissolution in September 2006 for failure to file annual reports required under Florida law. *See* Restaurant's 56.1 Stmt. ¶¶ 1, 14; Rosen's Cntrstmt. ¶ 14; Marks Decl., Ex. 1 (Doc. 81-4) (Report of Fl. Dep't of State, Div. of Corps.). Rosen operated All American from his Florida home, but traveled to New York to help supervise the concession stands. (Restaurant's 56.1 Stmt. ¶ 30.) All American never owned an insurance policy or any other real or personal property. (*Id.* ¶ 9.) With the exception of tax returns for fiscal years 2005 and 2006, All American failed to produce in discovery any formation documents, financial books or records, documents relating to bank accounts, records of shareholder or director meetings, paid invoices, or other accounting records, despite Restaurant's discovery requests. (*See id.* ¶¶ 4, 5; Rosen's Cntrstmt. ¶ 5.)

Plaintiffs were workers at the concession stands provided for in the Contract. (Restaurant's 56.1 Stmt. ¶¶ 35–36; Rosen's Cntrstmt. ¶¶ 35–36.) In their Complaint, plaintiffs alleged that defendants failed to pay straight time at the promised hourly wage and overtime at time and a half, as required by the FLSA. (Compl. (Doc. No. 1) ¶¶ 16–21, 107, 113; *see* 29 U.S.C. § 207(a)(1).) Plaintiffs alleged that All American hired them to work at the U.S. Open, and that All American, the USTA and Restaurant were "joint employers," each liable for the unpaid wages. (Compl. ¶¶ 14, 15, 22.) Restaurant and USTA subsequently moved to dismiss all claims against them, arguing that they were not "joint employers" of plaintiffs. (Defs. Restaurant's and USTA's Mot. to Dismiss (Doc. No. 24); Defs. Restaurant's and USTA's Mem. in Supp. of Mot. to Dismiss (Doc. No. 25) 1.) This Court denied that motion in September of 2008, finding that the fact-intensive nature of the test for joint employment precluded dismissal at such an early stage of the proceedings. *Bogosian v. All Am. Concessions*, No. 06-CV-1633

(RRM)(RML), 2008 WL 4534036, at *4 (E.D.N.Y. Sept. 30, 2008). By June of 2010, Restaurant settled with plaintiffs for $92,000. (*See* Minute Entry for Status Conf. before Magistrate Judge Robert M. Levy, June 1, 2010; Restaurant's 56.1 Stmt. ¶¶ 86–89; Rosen's Cntrstmt. ¶¶ 86–89.) Rosen and All American declined to participate in the settlement, although plaintiffs and Restaurant presented the opportunity to do so. (Restaurant's 56.1 Stmt. ¶¶ 89–90; Rosen's Cntrstmt. ¶ 89.)

Restaurant's instant motion for summary judgment on its cross-claim for indemnity is based on the Contract's indemnity provision. Restaurant seeks also to pierce All American's corporate veil to hold Rosen personally liable for All American's contractual obligation to indemnify Restaurant. For the reasons set forth below, the Court agrees with Restaurant on both fronts, and finds both All American and Rosen jointly and severally liable to Restaurant for the settlement amount of $92,000, and for reasonable attorney's fees and costs.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to

view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

## DISCUSSION

### I. Contractual Indemnity

Section 5.2 of the Contract, entitled "Indemnification," provides that:

> [All American] agrees to defend, indemnify and hold [Restaurant] and [USTA] harmless from and against any and all claims, expenses, loss or liability whatsoever, including court cost and attorneys' fees, arising out of or in connection with the act or omissions of [All American], its employees and agents. This provision shall survive the termination of [the Contract].

(Contract ¶ 5.2.) All American agrees that it "accepted a duty of indemnification to [Restaurant] and [USTA]." (Restaurant's 56.1 Stmt. ¶ 29; Rosen's Cntrstmt. ¶ 29.) In its memorandum in

5

support, Restaurant argues that the indemnification clause requires All American to compensate Restaurant for the $92,000 settlement with plaintiffs, and for the attorneys' fees Restaurant has incurred in defending this action. (Restaurant's Mem. in Supp. of Mot. for Summ. J. (Doc No. 81-2), 10–14.) In their responsive memorandum, Rosen and All American do not dispute that All American is liable to indemnify Restaurant for the settlement amount and attorneys' fees. In fact, after noting Restaurant's claim that All American and Rosen are liable to indemnify Restaurant, the memorandum in response specifies that it "is filed in opposition solely to the claim against Rosen for indemnification." (All Am. and Rosen's Response in Opp'n (Doc. No. 82) 2.) By abandoning its defense against Restaurant's claim for indemnity, and agreeing that it has "accepted a duty" to indemnify Restaurant, the Court finds that All American has conceded liability to indemnify Restaurant for the settlement amount and Restaurant's reasonable attorneys' fees. *See Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases))); *see also, e.g.*, *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (citing cases); *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, No. 91-CV-6808 (KTD), 2010 WL 571804, at *9 (S.D.N.Y. July 1, 2010).

The Court finds, moreover, that the indemnification clause applies to require All American to indemnify Restaurant on the merits. It is enforceable and unambiguously expresses the intent of the parties to require All American to indemnify Restaurant for liabilities, including attorneys' fees, arising out of claims involving All American's conduct, such as plaintiffs' claims that All American failed to pay wages required under federal and state law. *See St. Paul Fire &*

6

*Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 86 (2d Cir. 2005) (enforceability of similar indemnification clauses); *Ford Motor Credit Co. v. Meehan*, No. 05-CV-4807 (DRH)(AKT), 2008 WL 905886, at *3 (E.D.N.Y. Mar. 31, 2008) (same); *Perez v. Reade*, No. 07-CV-5072 (FB)(RML), 2011 WL 96837, at *3 (E.D.N.Y Jan. 11, 2011) (" 'A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances.' " (quoting *Drzeivinski v. Atl. Scaffold & Ladder Co.*, 70 N.Y.2d 774, 777 (1987))); *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 143 (E.D.N.Y. 2010) (same). All American is liable for the settlement amount because All American had notice of the claim, notice of the settlement negotiations, an opportunity to object to the settlement, and Restaurant entered the settlement reasonably and in good faith. *See Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 112 (2d Cir. 1986) (allowing indemnification for settlement amount if "(1) the settlement is reasonable, and if (2) the indemnitor has sufficient notice in which to object to the settlement terms"); *Tokio Marine & Fire Ins. Co. v. Pagan*, No. 02-CV-4211 (JSR), 2003 WL 1858147, at *2 (S.D.N.Y. Apr. 9, 2003) (holding indemnitor bound to pay indemnitee's settlement where indemnitor was on notice of the claim, and failed to show that indemnitee's settlement payment was not "reasonable and made in good faith"); *Goldmark Indus., Ltd. v. Tessoriere*, 681 N.Y.S.2d 327, 328 (App. Div. 2d Dep't 1998); *Coleman v. J.R.'s Tavern, Inc.*, 622 N.Y.S.2d 334, 335 (App. Div. 2d Dep't 1995).

The Court finds, therefore, that All American is liable under the Contract to indemnify Restaurant for the settlement amount, as well as for reasonable attorney's fees and costs. The Court will now address Rosen's liability, if any.

7

## II. Piercing the corporate veil

" '[T]he doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to . . . hold [the owner] liable for some underlying corporate obligation.' " *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 318 (E.D.N.Y. 2010) (quoting *Morris v. N.Y.S. Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 140–41 (1993)) (alterations in original). Here, Restaurant seeks to hold Rosen, as All American's former majority shareholder, liable to perform All American's "underlying corporate obligation" to indemnify Restaurant. In addressing this issue, the Court will apply New York law for the reasons stated below.

### A. Choice of Law

"[A] federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999) (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir.1989)). New York law requires that an actual conflict of laws be identified before applying a choice of law analysis. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001); *Casey ex rel. Casey v. Ryder Truck Rental, Inc.*, No. 00-CV-2856 (CLP), 2005 WL 1150228, at *4 (E.D.N.Y. May 16, 2005). Once a conflict is identified, New York choice of law rules require that the court apply the law of the state of incorporation to piercing claims. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991).

Here, All American was a Florida corporation. (Marks Decl., Ex. 2 (Doc. No. 81-5) (All American's Articles of Incorporation).) In their briefs, the parties rely primarily on New York law, and have not identified any conflict between New York and Florida law governing piercing;

courts have held, indeed, that no relevant conflict exists. *See Passalacqua*, 933 F.2d at 137 (applying New York law on finding that "the law in Florida . . . on corporate disregard is virtually identical to New York law" (citing *Bendix Home Sys., Inc. v. Hurston Enters., Inc.*, 566 F.2d 1039, 1041 (5th Cir. 1978))); *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01-CV-11765 (CSH), 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002) (applying New York law of piercing, upon finding that "the laws of New York and Florida governing the analysis are substantially the same"), *aff'd*, 264 F. App'x 36, 40 (2d Cir. 2008); *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 141 F. Supp. 2d 412, 417 (S.D.N.Y. 2001) (citing cases); *see also Am. Fuel Corp.*, 122 F.3d at 134 (applying New York piercing law against defendant, an Idaho corporation, finding New York and Idaho law "virtually identical," and that "the parties' briefs rel[ied] primarily on New York law"); *Quinn v. Teti*, 234 F.3d 1262 (2d Cir. 2000) (unpublished table); *In re Saba Enters., Inc.*, 421 B.R. 626, 649 (Bankr. S.D.N.Y. 2009) (discussing generally the application of New York law to pierce the veil of foreign corporations). Therefore, the Court will apply New York law to determine whether to pierce All American's corporate veil and hold Rosen personally liable to indemnify Restaurant.

### B. Domination and commission of a fraud or wrong

Turning now to the merits of Restaurant's claim against Rosen, the general rule provides that principals and officers are not liable to perform corporate obligations. *See, e.g.*, *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996); *Olympia*, 724 F. Supp. 2d at 318; *Tycoons Worldwide Grp. (Thai.) Pub. Co. v. JBL Supply Inc.*, 721 F. Supp. 2d 194, 205 (S.D.N.Y. 2010). Where a corporation's owners, however, " 'through their domination [of the corporation] abuse[ ] the privilege of doing business in the corporate

form to perpetrate a wrong or injustice against [a] party . . . a court in equity will intervene.' " *Olympia*, 724 F. Supp. 2d at 318 (quoting *Morris*, 82 N.Y.2d at 142) (alterations in original).

Under New York law, a party seeking to pierce the corporate veil must make a two-pronged showing: " '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.' " *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.*, No. 04-CV-5303 (NG)(VVP), 2007 WL 1288046, at *2 (E.D.N.Y. May 1, 2007) (quoting *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997)); *accord Am. Fuel Corp.*, 122 F.3d at 134.

### 1. Rosen's domination of All American

In the context of an individual shareholder's role with a corporation, as opposed to a corporate parent with multiple subsidiaries, courts typically consider the following factors to determine whether the shareholder sufficiently has dominated a corporation to meet the "complete domination" prong: " '(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, elections of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; . . . [4] common office space, address and telephone numbers of corporate entities; [5] the amount of business discretion displayed by the allegedly dominated corporation; . . . [6] the payment or guarantee of debts of the corporation by other corporations in the group; and [7] whether the corporation in question had property that was used by another . . . as if it were its own.' " *Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *3 (E.D.N.Y. Mar. 31, 2008) (quoting *Passalacqua*, 933 F.2d at 139); *see Capital Distrib. Servs.*, 2007 WL

1288046, at *3. No one factor is decisive. *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997). In applying these factors, the general principle followed by courts is that "liability is imposed to reach an equitable result." *Brunswick Corp. v. Waxman*, 599 F.2d 34, 35 (2d Cir. 1979) (citation omitted). Nonetheless, New York is reluctant to pierce the corporate veil and Restaurant bears the burden to show that the dominated company's "separate identity [has been] so disregarded, that it primarily transacted the dominator's business rather than its own." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989). A shareholder need not dominate the corporation in every aspect of business; it is sufficient if domination is established with respect to the transaction attacked. *See Thrift Drug*, 131 F.3d at 97; *Gorrill v. Icelandair/Flugleider*, 761 F.2d 847, 853 (2d Cir. 1985); *Marketplace LaGuardia*, 2008 WL 905188, at *3.

Here, the undisputed record evidence clearly establishes that Rosen exercised sufficient control over All American to have "dominated" it with respect to the Contract for purposes of the first prong. All American observed few, if any, corporate formalities, beyond those minimal requirements necessary to establish its legal existence under Florida law. Indeed, All American was dissolved administratively by the state for failing to file its annual report, a corporate formality required under Florida law. (*See* Marks Decl., Ex. 1 (Florida Department of State, Division of Corporations Report reciting All American's administrative dissolution for failure to file the required report); Fla. Stat. Ann. § 607.1420(1)(a) (requiring annual filing of corporate reports).) The undisputed record shows that All American never paid social security or payroll taxes, and never set up a workers' compensation account. (Restaurant's 56.1 Stmt. ¶ 11; Rosen Dep. (Doc. No. 81-25) 161, Apr. 16, 2010.) The record does not reflect that All American ever

11

held shareholder or director meetings, let alone retained minutes of the meetings.[3] (See Restaurant's 56.1 Stmt. ¶¶ 5–8; Rosen's Cntrstmt. ¶¶ 5–6.) The record plainly demonstrates, therefore, that Rosen and All American failed to observe the formalities necessary for All American to exist separately from Rosen's dominion and control. *See, e.g., Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 889 (S.D.N.Y. 1994) ("[T]he benefit of insulation from corporate liability is granted only on condition that the shareholders of the corporation maintain the formalities of corporate form and independence, and if they fail to do so, they risk the loss of their insulation from obligations of the corporation."); *see also Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988).

The record also shows that All American exercised no business discretion independent from Rosen's will. All American entered the Contract by the force of Rosen's efforts: Rosen met with representatives of Restaurant to discuss All American's provision of concessions in advance of the U.S. Open; Rosen reviewed drafts of the Contract for All American; Rosen discussed All American's liability insurance with Restaurant; and Rosen ultimately signed the Contract on All American's behalf. (*See* Rosen Dep. 19–22, 127–28; Restaurant's 56.1 Stmt. ¶¶ 22–23; Rosen's Cntrstmt. ¶¶ 22–23; Contract 10 (signature page)). Rosen ran All American out of his home, as president, director and majority shareholder, and All American paid Rosen's travel and lodging expenses when Rosen stayed in New York during the 2005 U.S. Open. (Restaurant's 56.1 Stmt. ¶¶ 1, 14; Rosen's Cntrstmt. ¶ 14; Rosen Dep. 116, 139–40, 160–61.) Although All American was administratively dissolved, All American stopped transacting business when Rosen unilaterally decided to focus his energies elsewhere. (*See* Rosen Dep. 10, 135.)

---

[3] When asked whether All American ever held or retained minutes of director meetings, Rosen testified that he "[didn't] know." (Rosen Dep. 103–04.)

In light of the above, the Court finds that the record indisputably shows that Rosen sufficiently dominated All American for purposes of the first prong of veil-piercing.

The Court's conclusion is bolstered by the adverse inference to which Restaurant is entitled by Rosen's repeated failure to comply with discovery obligations.[4] A party seeking an adverse inference based on failure to produce documents in discovery must show: " '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.' " *PSG Poker, LLC v. DeRosa-Grund*, No. 06-CV-1104 (DLC), 2008 WL 190055, at *7 (S.D.N.Y. Jan. 22, 2008) (quoting *Residential Funding*, 306 F.3d at 107). Restaurant requested documentary support of contracts All American entered after January 2005, bank account and tax records, articles of incorporation and bylaws, documents identifying property owned by All American, and "all financial books and records of All American . . . showing income and expenses from 2004 to present, including but not limited to, accounts receivable and accounts payable." (Marks Decl., Ex. 6 (Doc. No. 81-9) (Restaurant's First Request for Production), at 4–5.) Restaurant received nothing in response. (See Restaurant's 56.1 Stmt. ¶¶ 5, 7–8.).

---

[4] Rosen does not dispute Restaurant's contention that it is entitled to an adverse inference, relying instead on broad assertions that the record lacks evidence necessary to support summary judgment, *see, e.g.*, Response in Opp'n 5–7, without addressing the fact that any deficiency is entirely due to Rosen's intractability during discovery. Furthermore, district courts have broad discretion in fashioning an appropriate sanction for a party's failure to produce documents in breach its discovery obligations, including the creation of an adverse inference. Fed. R. Civ. P. 37(c)–(d); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *PSG Poker, LLC v. DeRosa-Grund*, No. 06-CV-1104 (DLC), 2007 WL 1837135, at *5 (S.D.N.Y. June 27, 2007); *Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, No. 00-CV-2798 (DLC), 2003 WL 941442, at *6 (S.D.N.Y. Mar. 7, 2003). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding*, 306 F.3d at 106–07 (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir. 1998)); *see Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

Rosen had control over the documents, and an obligation timely to produce them.[5] Furthermore, Rosen's unexplained failure to respond in any way to Restaurant's reasonable requests for production reflects a conscious decision deliberately to disregard his duties as a litigant, thus meeting the "culpable state of mind" requirement.[6] *See, e.g., Residential Funding*, 306 F.3d at 108 (culpable state of mind need not rise to the level of intent or recklessness; rather, a showing of negligence is sufficient); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *see also Reilly*, 181 F.3d at 268 ("[F]ailures [to produce evidence] occur 'along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality' " and may give rise to an adverse inference. (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988))); *PSG Poker*, 2008 WL 190055, at *12 ("[litigant's] repeated failure to either produce relevant documents or a credible story regarding their whereabouts – despite the admonitions of this Court and repeated requests from the plaintiffs – can only be interpreted as an intentional and willful act" sufficient to meet the "culpable state of mind" requirement); *Cordius Trust v. Kummerfeld*, No. 99-CV-3200 (DLC), 2008 WL 113664, at *4 (S.D.N.Y. Jan. 11, 2008) (finding an adverse inference justified where the corporation's owners "offered no adequate explanation for their failure to comply with [plaintiff's document production] requests," and concluding that "[t]here is simply no explanation other than willfulness for this behavior."). Plainly, the missing documents are "relevant" to Restaurant's

---

[5] Rosen, as a party to this litigation, had an obligation to respond to restaurant's timely requests – whether by compliance or objection – under Federal Rule of Civil Procedure 34(b)(2), and as a result of Magistrate Judge Levy's direction to produce the documents at a June 2010 status conference. (See Minute Entry, June 1, 2010.) Rosen knew that Restaurant would seek to hold him personally liable, and therefore that the requested materials would be vital to the case, by June 2010 at the latest, when Restaurant wrote in its request for a pre-motion conference that it was seeking to move for indemnification against All American and Rosen personally. (Restaurant's Letter Request (Doc. No. 72) 1.) Rosen at all times was represented by competent counsel.

[6] The Court notes that here is not a situation where a party has argued privilege, prejudice, lack of notice, good faith negligence, or any other objection, however flimsy, to production. To the contrary, Rosen has not deigned to offer his opponent or the Court any explanation, objection, or excuse whatsoever for his failure to produce. As noted, Rosen has not raised any arguments against the raising of an adverse inference.

14

request to pierce All American's corporate veil because "a reasonable trier of fact could find that [the missing documents] would support the [request to pierce]." *Residential Funding*, 306 F.3d at 109.[7] Moreover, virtually all of the documents requested "related to [All American's] corporate financial records, and [were] thus obviously germane to the alter ego determination that [Restaurant is] urging the [Court] to make." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010).

Rosen's failure to comply with his discovery obligations, therefore, lends further support to the Court's conclusion that Rosen dominated All American for purposes of the first prong of the veil-piercing analysis, particularly with respect to the keeping of corporate formalities, capitalization, and personal use of the corporate treasury. See *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991) (reasoning that an adverse inference helps to "restore the evidentiary balance" and avoids "the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its [non-production]"); *see also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (stating that an adverse inference instruction serves the remedial purpose, "insofar as possible, of restoring the prejudiced party to the same position he would have been in" had the evidence been produced).[8]

Accordingly, the Court finds no genuine issues of material fact and finds that Rosen sufficiently dominated All American for purposes of piercing the corporate veil.

---

[7] Where, as here, a Court finds a litigant to have acted with a particularly culpable state of mind, relevance may be presumed. *See id.* ("[B]ad faith or . . . gross negligence (satisfying the 'culpable state of mind' factor) . . . will frequently also be sufficient to permit a jury to conclude that the missing evidence . . . satisf[ies] the 'relevance' factor.") The deliberate disregard with which Rosen ignored Restaurant's request is enough to show that the missing records are "relevant." *See also S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (noting also that "the simple failure to produce evidence in a timely manner in and of itself can support an inference that the evidence withheld would be unfavorable to the noncompliant party" (citing *Residential Funding*, 306 F.3d at 109)).

[8] The Court notes that, by drawing the adverse inference here, it is not shifting the burden of proof away from Restaurant, the summary judgment movant; rather, "[d]rawing that inference against [Rosen] . . . simply add[s] to the evidence upon which [Restaurant may] draw in carrying its burden." *Smoothline*, 2003 WL 941442, at *6.

## 2. Rosen's use of All American to commit a fraud or wrong

Standing alone, Rosen's domination of All American is only the first inquiry necessary to establish Rosen's liability. Under New York law, Restaurant also must show that Rosen, "through [his] domination, 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [Restaurant] such that a court in equity will intervene.' " *Marketplace LaGuardia*, 2008 WL 905188, at *5 (quoting *Morris*, 82 N.Y.2d at 141–42); *accord Thrift Drug*, 131 F.3d at 97; *Am. Fuel Corp.*, 122 F.3d at 134. To satisfy this requirement, the party seeking to pierce may demonstrate either the elements of fraud, or a " 'non-fraudulent 'wrong' attributable to the defendant's complete domination of the corporation in question.' " *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 121–22 (S.D.N.Y. 1996)); *see Freeman*, 119 F.3d at 1053 (requiring that the defendant's control be " 'used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights, and that the control and breach of duty proximately cause[] the injury complained of.' " (quoting *Electronic Switching Indus. v. Frardyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987)); *Marketplace LaGuardia*, 2008 WL 905188, at *5; *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 425–26 (S.D.N.Y. 2003).

As discussed below, the record plainly demonstrates that Rosen used his control of All American to commit a fraud or wrong against Restaurant by entering into the Contract without the ability to perform, or the expectation of ability to perform, and by effectively stripping All American of assets, rendering it unable to satisfy its obligations.

Entry into a transaction without the "present ability or expectation of ability to perform is sufficiently wrongful for veil piercing purposes." *Network Enters., Inc. v. APBA Offshore*

*Prods., Inc.*, 264 F. App'x 36, 41 (2d Cir. 2008) (citing *Capital Inv. Corp. v. Albemarle Hotel, Inc.*, 550 So. 2d 49, 51 (Fla. Dist. Ct. App. 1989)). Here, the undisputed record, including Rosen's own deposition testimony establishes that, at the time All American entered the Contract, All American lacked the ability to perform. The Contract was reduced to a writing on the last day of the 2005 U.S. Open, at which time, according to Rosen's deposition testimony, Rosen "[didn't] know if there was anything left to pay [All American managers] with," let alone indemnify Restaurant for liabilities arising out of All American's acts. (*See* Rosen Dep. 29, 141–42; Restaurant's 56.1 Stmt. ¶ 34.) Moreover, to the detriment of Restaurant, Rosen caused All American to fail to procure the insurance policies it promised in the Contract, further increasing Restaurant's potential exposure.[9] (Restaurant's 56.1 Stmt. ¶ 28.) Restaurant, therefore, is entitled to summary judgment on this ground.

Moreover, " '[u]nder New York law, the diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced.' " *Olympia*, 724 F. Supp. 2d at 320 (quoting *Capital Distrib. Servs.*, 2007 WL 1288046, at *3); *accord JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 386 F. Supp. 2d 461, 476 (S.D.N.Y. 2005). Indeed, "[a] classic example of a 'fraud or wrong' . . . is the stripping of the assets of the dominated corporation for the purposes of rendering it judgment-proof." *Marketplace LaGuardia*, 2008 WL 905188, at *5; *see Am. Fuel Corp.*, 122 F.3d at 135 (citing *Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc.*, 758 F. Supp. 908, 917 (S.D.N.Y. 1991)). Here, All American's cessation of activities and ultimate dissolution

---

[9] Rosen's assertion that All American adequately performed other contracts with other parties prior to the Contract is irrelevant; the relevant inquiry concerns All American's status at the time of entry into the Contract at issue here. *See, e.g., Carte Blanche (Sing.) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 28 (2d Cir. 1993); *Eckhaus v. Blauner*, No. 94-CV-5635 (CSH), 1997 WL 362166, at *6 (S.D.N.Y. June 26, 1997) ("While a debtor corporation may have begun its existence as a separate entity, the pertinent question is its status at the time that the creditor's claim arose.").

followed close on the heels of plaintiffs' commencement of this action and Restaurant's demand for indemnity. (*See* Restaurant's 56.1 Stmt. ¶¶ 14, 59 (Restaurant's demands for indemnity in May 2006); Rosen's Cntrstmt. ¶ 14; Rosen Dep. 9–10; Marks Decl., Ex. 1 (All American's September 2006 administrative dissolution).) Moreover, Rosen used All American's funds to pay his travel and lodging expenses in New York during the 2005 U.S. Open, when All American's financial condition had deteriorated. *See* Rosen Dep. 116, 139–40, 160–61; *see also Eckhaus v. Blauner*, No. 94-CV-5635 (CSH), 1997 WL 362166, at *7 (S.D.N.Y. June 26, 1997) ("[The] failure to capitalize [the controlled corporation], together with the disappearance of [the controlled corporation] shortly after [the creditor] recovered its judgment, are sufficient indicia of fraud to require piercing [the] corporate veil."). There is no dispute that All American is effectively judgment-proof, rendered so by the actions of Rosen himself.

The undisputed record plainly reflects, therefore, that Rosen used All American to "perpetrate a wrong or injustice," thus meeting the second prong of the veil-piercing analysis.[10] Summary judgment is therefore appropriate on Restaurant's claim to pierce All American's corporate veil to hold Rosen personally liable to perform All American's obligation to indemnify Restaurant under the Contract for the settlement amount of $92,000, and for reasonable

---

[10] The Court's conclusion, again, is lent further support by the adverse inference to which Restaurant is entitled based on Rosen and All American's failure to comply with discovery obligations, as discussed *supra*. For example, asset stripping, undercapitalization and the inability to perform the Contract, properly may be inferred from Rosen's refusal to produce transactional or financial documents, or otherwise respond to plaintiffs' document requests. *See, e.g.*, *Olympia*, 724 F. Supp. 2d at 320; *PSG Poker*, 2008 WL 190055, at *8; *Eckhaus*, 1997 WL 362166, at *7; *Smoothline*, 2003 WL 941442, at *2–3 ("Since the evidence that would answer this [question whether the owners stripped the assets of their corporations] is exclusively within the custody and control of the [owners or their corporations], it is fair to infer that the truth is unfavorable to [them]," where the owners failed to produce the evidence in discovery.).

attorney's fees and costs.[11]

## CONCLUSION

For the reasons stated in this Memorandum and Order, Restaurant's motion for summary judgment on its cross-claim for indemnity against All American and Rosen is GRANTED in its entirety, and judgment shall enter in favor of Restaurant and as against All American and Rosen, jointly and severally, in the amount of $92,000. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: Brooklyn, New York
September 26, 2011

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge

---

[11] The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed. *See, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007). While Restaurant contends that it has incurred $143,400 in defending this action, it has not submitted any evidence in support of that sum. As such, while the Court finds that an award of such fees and costs is warranted, it cannot properly evaluate the amount requested without further documentation. Should Restaurant wish to press its application, it shall submit within 14 days of the entry of judgment pursuant to Rule 54(d)(2)(b) a supplemental request together with contemporaneous time and billing records supporting the amount sought. Any opposition shall be filed within seven days after the submission of Restaurant's supplemental request.